IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| CODY RAY LEVEKE,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>HEARST PROPERTIES, INC., and JOHN DOES 2-10,<br><br>　　　　Defendants. | 4:24-cv-00152-SHL-WPK<br><br>**ORDER GRANTING MOTION TO DISMISS** |

**I.    INTRODUCTION.**

Plaintiff Cody Ray Leveke alleges that Hearst Properties Inc. ("Hearst") and nine John Doe Defendants defamed him in an article published online after Leveke's arrest on criminal charges. (ECF 22.) Leveke did not, however, bring his case within the applicable statute of limitations. The Court therefore GRANTS Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF 27.)

**II.    BACKGROUND.**

*A. Facts.*

In ruling on a motion to dismiss, the Court accepts all well-pleaded facts as true and draws all inferences in favor of Leveke. *See Healy v. Fox*, 46 F.4th 739, 743 (8th Cir. 2022). The Court may also, however, consider matters of public records, such as documents from Leveke's criminal cases. *See Roberson v. Dakota Boys & Girls Ranch*, 42 F.4th 924, 928 (8th Cir. 2022). The Court also, in an abundance of caution, will consider allegations in Leveke's Response to Defendant's Motion to Dismiss (ECF 28), which is, in effect, a request by Leveke to amend his pleading to address alleged deficiencies in his original (ECF 1) and Amended Complaints (ECF 22).

In 2004, Leveke pleaded guilty to incest in violation of Iowa Code § 726.2 in Polk County, Iowa. (ECF 28-1, p. 1; ECF 27-6, p. 2; ECF 27-12, p. 2.) Following his conviction, Leveke was required to register as a sex offender under Iowa law. (ECF 28-1, pp. 1, 3.) Leveke moved to Arizona in 2009 and was required under Arizona law to register as a sex offender due to his ongoing Iowa registration requirements. (Id., p. 1; ECF 28, pp. 8–9; ECF 27-6, p. 2.) Shortly after moving to Arizona, Leveke contacted Iowa State Senator Herman Quirmbach to advocate for legislation that would allow sex offenders residing outside the state to modify their Iowa

registration requirements. (ECF 28-1, p. 3; ECF 27-6, p. 2; ECF 27-9, p. 6.) Although no such legislation was enacted (ECF 28-1, p. 3), Leveke successfully challenged the constitutionality of the residency requirement of Iowa Code § 692A.128(3)[1] in the Iowa District Court for Polk County (ECF 27-12; ECF 28, p. 8 & n.3). As a result, on February 13, 2018, the Iowa District Court ordered the immediate termination of Leveke's Iowa sex offender registration requirements, as well as his removal from the Iowa Sex Offender Registry. (ECF 27-12, p. 3.)

Leveke asserts that in January 2019 he moved from Arizona to Colorado. (ECF 28-1, pp. 2, 5.) However, upon returning to Arizona for a civil court hearing the following month, he was arrested for failing to register as a sex offender in Arizona. (Id., p. 2.) Leveke asserts that because his duty to register as a sex offender in Arizona was predicated upon his Iowa registration requirements, which were terminated by the Iowa District Court for Polk County in 2018, he had no duty to register as a sex offender in Arizona at the time of his arrest in February 2019. (ECF 28, pp. 8–9; ECF 28-1, p. 2.) Leveke was not subsequently indicted on the failure to register charge (ECF 28-1, p. 2), although he was indicted on other, unrelated charges and later pleaded guilty to two counts of aggravated harassment in Arizona (ECF 27-6, p. 4). Leveke was sentenced to three months' imprisonment and two years' probation. (Id.)

After being released on probation, Leveke lived transiently for a short period of time before settling in Southern California in late August 2019. (ECF 28, p. 5; ECF 28-1, p. 15.) On September 3 and 4, 2019, Leveke sent a series of emails and a voicemail to Senator Quirmbach expressing his frustration with the Tempe, Arizona Police Department and about being accused of violating Arizona's sex offender registry laws. (ECF 28-1, p. 2; ECF 27-6, pp. 2–3.) Leveke also expressed frustration with the Iowa Legislature's failure to pass a law to eliminate § 692A.128's residency requirement, stating, in relevant part: "I'm angry enough to pull a mass shooting down at the State House" (ECF 27-4, ¶ 11); "[t]hose that conspired to violate my civil rights and the rights of others under color of law should live in fear" (id.); "STOP BREAKING THE LAW ASSHOLE" (id.); "[t]he continuing Disobedience to the Constitution by the legislature deserves a violent response at this point" (id., ¶ 13); "THE 2ND AMENDMENT EXISTS SO WE CAN KILL POLITICIANS WHEN THEY DONT ACT IN ACCORDANCE TO LAW" (id.); and "[t]hose that seek to violate the Constitution will be held accountable and will answer to me" (id., ¶ 14). These messages led to the filing of a criminal complaint against Leveke for violating Iowa Code § 708A.5 and the

---

[1] Now Iowa Code § 692A.128(4).

issuance of a warrant for his arrest. (Id., ¶ 5; ECF 27-6, p. 3.) Leveke was eventually arrested in California on October 22, 2019, and appeared in the Iowa District Court for Story County on November 6, 2019. (ECF 27-4, ¶¶ 17–18; ECF 27-6, p. 3; ECF 28-1, p. 5.)

On December 20, 2019, a criminal complaint was filed against Leveke in the United States District Court for the Southern District of Iowa charging him with Interstate Transmission of a Threat in violation of 18 U.S.C. § 875(c). (ECF 27-4, p. 2.) The federal criminal complaint was supported by an affidavit from Iowa Division of Criminal Investigations Special Agent Donald Schnitker. (Id., pp. 3–8.) Schnitker's Affidavit stated, in part, that Leveke "is currently registered as a sex offender in Arizona" (id., ¶ 7), and "is required to register as a sex offender in Arizona because he was convicted of sexual abuse in the 3rd degree by the Iowa District Court for Polk County on March 16, 2004" (id., ¶ 8). Then-Chief United States Magistrate Judge Helen C. Adams issued a warrant for Leveke's arrest the same day. (ECF 27-5.) Leveke came into federal custody on December 23, 2019. (Id.)

On December 24, 2019, while Leveke was in federal custody, Hearst published a news article about him on the KCCI website, entitled "Arizona man charged with making threats to Story County Senator." *Arizona man charged with making threats to Story County senator*, KCCI (Dec. 24, 2019, 5:09 PM), https://www.kcci.com/article/arizona-man-charged-with-making-threats-to-story-county-senator/30325783. The article states, as relevant:

> Federal prosecutors charged an Arizona man with making terrorist threats to State Senator Herman Quirmbach. A federal indictment said Leveke, who also goes by the name Cody Meyer, was convicted of third-degree sexual abuse in Polk County in 2004, requiring him to register as a sex offender in his current state.

*Id.* A video of a KCCI news broadcast embedded in the article states:

> A convicted sex offender living in Arizona allegedly threatened to pull a mass shooting at the Iowa Statehouse. Federal prosecutors say thirty-six-year-old Cody Leveke also made terrorist threats to Ames lawmaker Herman Quirmbach. Court documents showed that Leveke was angry because a bill he thought would ease his registration requirements has not moved quickly enough through the Iowa Legislature. Leveke pleaded guilty to incest in Polk County back in 2004. He lived in the state of Iowa until 2016.

*Id.* The video also contains a photo of Leveke accompanied by text that describes him as being "REGISTERED AS A SEX OFFENDER IN ARIZONA." *Id.* The article and accompanying video are still available on KCCI's website, and the story was last updated, according to the website, at 5:09 PM CST on December 24, 2019. *Id.*

3

On December 27, 2019, Leveke was ordered to remain in detention pending trial. (See ECF 27-6, p. 2.) On January 21, 2020, a grand jury in the Southern District of Iowa indicted Leveke on two counts of Interstate Communication of a Threat. (ECF 27-7.) On September 29, 2020, a jury found Leveke guilty of both counts. (ECF 27-8.) On January 29, 2021, Leveke was sentenced to sixty months' imprisonment and three years' supervised release for each count, to be served concurrently. (ECF 27-10, pp. 2–4.)

After Leveke's sentencing, Hearst published a second news article about him on its KCCI website entitled, "'Not one gram of remorse': Arizona man who threatened Iowa lawmakers sentenced." *'Not one gram of remorse': Arizona man who threatened Iowa lawmakers sentenced*, KCCI (Feb. 1, 2021, 11:13 AM), https://www.kcci.com/article/arizona-man-cody-leveke-who-threatened-iowa-lawmakers-sentenced/35383268. The article included the same KCCI news broadcast video that was embedded in the December 2019 article about Leveke. *Id.* The second article and accompanying video are still available on KCCI's website, and the story was last updated, according to the website, at 11:13 AM CST on February 1, 2021. *Id.*

Leveke claims he did not have internet access while he was in federal custody (ECF 28, p. 16), although he admits he became aware of the 2021 article while incarcerated through a hardcopy "printout" (ECF 28-1, p. 3). Even so, he says he was unable to view the video embedded in the 2021 article at any time during his incarceration. (Id.) He also says that friends, family, and appointed counsel sometimes did not answer his requests for more information about news articles. (Id.) Leveke therefore asserts that he was unable to discover the alleged defamatory statements Hearst published in its 2019 article or view the alleged defamatory video embedded in both the 2019 and 2021 articles until after his release from prison. (Id., pp. 3–4; ECF 28, pp. 1–2.) Leveke asserts that it was not until late March 2024 that he discovered Hearst's articles while performing Google searches for his name. (ECF 28, pp. 1–2.)

Leveke filed this case in early May 2024. (ECF 1.) Later, he filed a defamation claim with the Iowa State Appeal Board against Schnitker and the State of Iowa, which was denied. (ECF 27-11, pp. 5–13.) The State Appeal Board explained that it examined "[c]ase reports and trial information" and concluded that the statements in the Schnitker Affidavit "were not false and the information regarding the claimant's sex offender registry status were confirmed via law enforcement record systems." (Id., p. 7.) On August 15, 2024, Leveke, brought a defamation action against Schnitker, the State of Iowa, and ten John Doe Defendants in the Iowa District Court for

Polk County for alleged "false and defamatory statements concerning [Leveke's] criminal history and registration requirements." (Id., pp. 2–4.) That case remains pending. *See Leveke v. Schnitker*, LACL159715, at EDMS 11.[2]

### B. Procedural History.

Leveke filed a *pro se* civil complaint in this Court against "Hearst Television Inc.," "KCCI-TV," and ten John Doe Defendants on May 2, 2024. (ECF 1.) In June 2024, Leveke filed an Amended Complaint naming Hearst [Properties Inc.] as the proper Defendant (ECF 22), and a Notice of Dismissal of Hearst Television Inc. and KCCI-TV (ECF 23). His Amended Complaint continued to include claims against nine John Doe Defendants. (ECF 22.)

Leveke's Amended Complaint brings claims against Hearst "for defamation arising from false and damaging statements published by the Defendants." (Id., p. 5.) Specifically, Leveke alleges that Hearst published news stories falsely claiming that "[a] federal indictment said Leveke, who also goes by the name Cody Meyer, was convicted of third-degree sexual abuse in Polk County in 2004, requiring him to register as a sex offender in his current state." (Id.) Leveke claimed that such statements are "wholly false and defamatory" because: (a) he has never been convicted of an offense amounting to third degree-sexual abuse; (b) he was not required to register as a sex offender in Arizona or Iowa at the time Hearst published the story or any time thereafter; and (c) there is no federal indictment that supports Hearst's claims. (Id.) Leveke accuses Hearst of communicating the defamatory statements to third parties, continuing to seek out new parties to distribute the false statements to, and refusing to correct the false statements despite requests from Leveke to do so. (Id.) Leveke alleges that Hearst offered to stop publishing the false statement only if Leveke would agree to "sign a full release of all claims [] against Hearst." (Id. (alteration in original)) Leveke accuses Hearst of distributing the defamatory statements for monetary gain and claims that the publication has caused irreparable harm to his reputation, "resulting in significant emotional distress, social stigma, and damage to personal relationships." (Id.) Leveke alleges that he has incurred damages in excess of $75,000 "due to the severe harm inflicted on [his] reputation, livelihood, and personal well-being." (Id., p. 4.) He alleges that "the nature of the false allegations, particularly involving sexual misconduct, have exacerbated the severity of the harm suffered by

---

[2] "EDMS" refers to the State of Iowa's electronic filing and case management system. The Court may take judicial notice of public records from the EDMS system. *See United States v. Schneider*, 905 F.3d 1088, 1092 n.1 (8th Cir. 2018) (stating that federal courts may take judicial notice of judicial opinions and public records). References to documents in EDMS are denoted by "EDMS [docket entry]."

[him], warranting substantial compensation to mitigate the resulting damages and restore [his] reputation and dignity." (Id.)

Hearst moves to dismiss Leveke's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF 27.) Hearst argues that Leveke's defamation claim should be evaluated based on the single allegedly defamatory statement he identified in the Amended Complaint, which came from the December 2019 article. (ECF 27-1, pp. 8, 12; ECF 29, pp. 2–3.) Additionally, Hearst asserts that Arizona law, rather than Iowa law, should apply to Leveke's defamation claim based on Iowa's "most significant relationship" test, although Hearst also argues that Leveke cannot state a viable defamation claim under the laws of either state. (ECF 27, ¶¶ 1–4; ECF 27-1; see also ECF 29, pp. 3–6.)

## III. LEGAL STANDARDS.

### A. Motion to Dismiss.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Rydholm v. Equifax Info. Servs. LLC*, 44 F.4th 1105, 1108 (8th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

"A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however, inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). In determining plausibility, the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012) (per curiam). The Court is not, however, "obligated to accept legal conclusions, and '[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *United States ex rel. Ambrosecchia v. Paddock Lab'ys, LLC*, 855 F.3d 949, 955 (8th Cir. 2017) (alteration in original) (quoting *Iqbal*, 556 U.S. at 678).

It is well established that the Court may consider materials outside the pleadings that are "necessarily embraced by the complaint." *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012). "Documents necessarily embraced by the pleadings include documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Id.* "[C]ourts additionally consider 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned;' without converting the motion into one for summary judgment." *Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004)).

    B.  *Choice of Law.*

Leveke is pursuing relief in Iowa based on an article and video published by an Iowa-based news station (ECF 16), while Leveke was arguably domiciled in Iowa, Arizona, or California (see ECF 28, pp. 5–7; ECF 27-1, pp. 16–18). This means there are plausible arguments for applying the substantive law of Iowa, Arizona, or California. "In a diversity suit, we apply the choice-of-law rules of the forum State but need not conduct a choice-of-law analysis unless an actual conflict exists." *Collins v. Metro. Life Ins. Co.*, 117 F.4th 1010, 1015 n.1 (8th Cir. 2024), *petition for cert. filed*, 93 U.S.L.W. 3157 (U.S. Dec. 19, 2024) (No. 24-680). Here, Defendants' Motion to Dismiss revolves around three issues: the statute of limitations, fair reporting privilege, and substantial truth doctrine. (ECF 27-1.) For reasons explained below, the Court concludes that any differences in state law on these three issues are immaterial to the outcome of the Motion to Dismiss, and thus there is no need to determine which state's substantive law applies.

**IV.**    **LEGAL ANALYSIS.**

    A.  *Leveke's Claims Are Untimely.*

It is undisputed that the original publication of the allegedly defamatory statements occurred in December 2019 when Hearst published an article about Leveke on the KCCI website. This is approximately four-and-one-half years before Leveke filed this case. His defamation claims are therefore untimely under Arizona, California, and Iowa law alike unless an exception applies. *See* Ariz. Rev. Stat. § 12-541(1) (establishing one-year statute of limitations for defamation claims); Cal. Civ. Proc. Code § 340(c) (same); Iowa Code § 614.1(2) (establishing two-year statute of limitations for injuries to person or reputation); *see also Clark v. Figge*, 181 N.W.2d 211, 215

7

(Iowa 1970) (applying two-year statute of limitations to defamation claims). Leveke argues that exceptions apply here based on the republication doctrine and discovery rule. (ECF 28, pp. 12 – 17.) The Court will evaluate these exceptions under each of California, Arizona, and Iowa law.

       1. <u>Leveke's Claims Are Time-Barred Under California Law.</u>

California law applies the "single-publication rule" to statements published on Internet websites and "limits tort claims premised on mass communications to a single cause of action that accrues upon the first publication of the communication." *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1166–67 (9th Cir. 2011); *see also* Cal. Civ. Code § 3425.3. "Information is generally considered 'published' within the meaning of the single-publication rule when it is first made available to the public . . . ." *Roberts*, 660 F.3d at 1167. Republication will "reset" the statute of limitations only if the statement is "substantively altered or directed to a new audience." *Youngevity Int'l, Corp. v. Smith*, 224 F. Supp. 3d 1022, 1027 (S.D. Cal. 2016), *modified*, No. 3:16-cv-00704-L-JLB, 2016 WL 7626585 (S.D. Cal. Dec. 9, 2016). The failure to retract an allegedly defamatory communication does not constitute republication. *Roberts*, 660 F.3d at 1168.

Here, Hearst did not substantively alter the article about Leveke or direct it to a new audience by continuing to make it available on the KCCI website. Hearst therefore did not engage in "republication" under California law by continuing to make the article available, and thus the republication doctrine does not save Leveke's untimely claim. *See id.* It does not matter that new or different advertisements appeared on the webpage banner over the years, as the article itself was not published anew or changed.

Granted, Leveke argues that Hearst "republished" the December 2019 video by embedding it in a new article in early February 2021 after his sentencing hearing in his federal criminal case. (See ECF 28, pp. 2, 10.) In the unlikely event this would be considered a "republication" of the original video under California law, it would not save Leveke's claim from dismissal because he still waited almost three-and-one-half years before filing his claims. This is well beyond the one-year statute of limitations. *See* Cal. Civ. Proc. Code § 340(c).

Further, the Court rejects Leveke's argument that Hearst "republished" the article by including a "robots.txt file" on the KCCI website that allows Google's web crawlers to index the article and make it appear in response to Google searches. (ECF 28, pp. 2–3, 12–15.) The version of the article retrieved by a Google search "is not a subsequent publication intended to reach a new audience. It is not a new edition disseminated at the behest of [Hearst]. It is merely the same version

of the [article], which has been stored by a third party." *In re Min. Res. Int'l, Inc.*, 565 B.R. 684, 698 (Bankr. D. Utah 2017); *see also Seltzer v. Fin. Indus. Regul. Auth.*, No. 1:22-cv-00330 (JMC), 2023 WL 5723460, at *2–3 (D.D.C. Sept. 5, 2023) (rejecting argument that the defendant republished defamatory statements by making them available to Google users), *aff'd per curiam*, No. 23-7126, 2024 WL 1128099 (D.C. Cir. Mar. 8, 2024). "To hold otherwise would eviscerate the single publication rule. Given the ubiquity of Google searches, the statute of limitations would never expire." *In re Min. Res. Int'l, Inc.*, 565 B.R. at 699.

Leveke's discovery rule argument likewise fails. The discovery rule applies "when the defamatory statement is hidden from view as, for example, in a personnel file that generally cannot be inspected by the plaintiff." *Shively v. Bozanich*, 80 P.3d 676, 687 (Cal. 2003), *as modified* (Dec. 22, 2003). The discovery rule does not apply when the defamatory statement is published in a widely available medium such as a book, magazine, or newspaper. *Id.* at 688. Holding otherwise "would undermine the single-publication rule and reinstate the indefinite tolling of the statute of limitations intended to be cured by the adoption of the single-publication rule." *Id.* at 688–89. Here, because Hearst published the allegedly defamatory statements on a widely available website, the discovery rule is of no benefit to Leveke. *See id.* at 690 (holding that discovery rule did not toll statute of limitations once defamatory statement was "published and was distributed to the general public").

The only other potential source of assistance to Leveke under California law is California Code of Civil Procedure § 352.1(a), which tolls the statute of limitations for up to two years for a plaintiff who is incarcerated at the time a cause of action arises. If § 352.1(a) applies here, it would mean the statute of limitations against Leveke tolled for two years after Hearst's publication of the allegedly defamatory material in December 2019, which is to say, the statute would have begun to run in December 2021. As Leveke did not file his claims until May 2024, they are still untimely. *See, e.g.*, *Fink v. Shedler*, 192 F.3d 911, 915 (9th Cir. 1999) (affirming dismissal where claim remained untimely even after applying two years of tolling). The same is true if Hearst's embedding of the December 2019 video in an article in early February 2021 is interpreted as a "republication" of that video. In this scenario, the statute of limitations for Leveke's claims would have tolled until February 2023. As he did not bring his claims until May 2024, they remain untimely under California's one-year statute of limitations.

2. Leveke's Claims Are Time-Barred Under Arizona Law.

The outcome is the same under Arizona law, which applies the single-publication rule in a manner similar to California law. *See Larue v. Brown*, 333 P.3d 767, 771–72 (Ariz. Ct. App. 2014). "[I]n the case of Internet publications, the statute of limitations begins to run when the allegedly defamatory material is first made available to the public by posting it on a website." *Id.* at 772; *see also Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 615 (7th Cir. 2013) ("Every state court that has considered the question applies the single-publication rule to information online."). Leveke's claims are therefore untimely under Arizona's one-year statute of limitations because he did not bring them within one year of Hearst's original publication of the allegedly defamatory material in December 2019. *See* Ariz. Rev. Stat. § 12-541(1).

The result is the same even if Hearst restarted the statute of limitations in early February 2021 when it embedded the original KCCI video in the newly written story about Leveke's sentencing hearing. Leveke did not file his claims until more than three years later, putting those claims well outside the one-year limitations period. *See id.* Indeed, Leveke's claims are even more untimely under Arizona law than California because Arizona does not toll the statute of limitations for people who are incarcerated. *See Dy v. La Palma Corr. Ctr.*, No. CV-16-03924-PHX-ROS (BSB), 2018 WL 10195791, at *4 (D. Ariz. January 18, 2018) ("Arizona has no such tolling for imprisonment."), *aff'd mem. sub nom. Dy v. Nale*, 772 F. App'x 558 (9th Cir. 2019). Moreover, as it did in the context of California law, the Court rejects under Arizona law Leveke's argument that Hearst "republishes" the December 2019 and February 2021 articles each time the embedded robots.txt file on the KCCI website interacts with Google technology to make the article appear in response to Google searches. The Court has little difficulty predicting that that the Arizona Supreme Court would not treat this as a "republication." *See In re Min. Res. Int'l, Inc.*, 565 B.R. at 698–99.

Finally, like California law, the discovery rule does not save Leveke's claims under Arizona law because it applies only in "limited" circumstances where the allegedly defamatory statements are published "in an inherently secretive or confidential manner." *Clark v. AiResearch Mfg. Co. of Ariz., a Div. of Garrett Corp.*, 673 P.2d 984, 986–87 (Ariz. Ct. App. 1983). Here, it is self-evident that Hearst's article was not "inherently secretive or confidential" because it was published on a website available to the general public; indeed, Leveke learned of the article while incarcerated.

*See id.* at 987 (declining to apply discovery rule where plaintiff admitted knowledge of allegedly defamatory statements). The discovery rule therefore does not save his claims from dismissal.

3. Leveke's Claims Are Time-Barred Under Iowa Law.

Iowa law is more favorable to Leveke in some ways than Arizona or California law because the statute of limitations for defamation claims is two years, not one. *See* Iowa Code § 614.1(2); *Clark*, 181 N.W.2d at 215. Moreover, although the Iowa Supreme Court appears to have endorsed the single publication rule, it has done so in a way that "appears to be more plaintiff-friendly than the rule applied in [other states] because there is no apparent requirement [under Iowa law] for the subsequent publication to be designed to 'reach a new audience or promote a different product.'" *Est. of Bisignano by & through Huntsman v. Exile Brewing Co., LLC*, 694 F. Supp. 3d 1088, 1129 (S.D. Iowa 2023) (quoting *Blair v. Nev. Landing P'ship*, 859 N.E.2d 1188, 1194 (Ill. App. Ct. 2006)) (analyzing *Kiner v. Reliance Ins. Co.*, 463 N.W.2d 9, 13–14 (Iowa 1990)). Even so, Leveke's claims are clearly untimely under Iowa law given that he did not bring them until more than two years had passed from both the publication of the original article in December 2019 and the second article (with the embedded video link) in February 2021.

The Court predicts that the Iowa Supreme Court would not apply the discovery rule or republication doctrine in a way that would save Leveke's claims from dismissal. As to the former, the Iowa Supreme Court has not decided whether the discovery rule applies to defamation claims. *See Linn v. Montgomery*, 903 N.W.2d 337, 343 (Iowa 2017). Even if it does, however, the Court cannot imagine the Iowa Supreme Court applying it as broadly as Leveke would need to make his claims viable. Courts in other jurisdictions have either refused to apply the discovery rule at all or have done so only in narrow circumstances where the initial publication was secretive. *See, e.g.*, *Mullin v. Wash. Free Wkly., Inc.*, 785 A.2d 296, 297 (D.C. 2001) ("The principal issue before us is whether the statute of limitations began to run on the date of publication or not until appellant learned of the article several days later. We follow the virtually unanimous rule in this country and hold that the statute began to run on the date of publication."); *Quality Auto Parts Co. v. Bluff City Buick Co.*, 876 S.W.2d 818, 821 (Tenn. 1994) ("The great majority of courts in other jurisdictions have held that the discovery rule does not alter the general rule that the time period begins to run when the words are uttered."); *Atkinson v. McLaughlin*, 462 F. Supp. 2d 1038, 1056 (D.N.D. 2006) (explaining that courts have applied the discovery rule in defamation cases "only in limited circumstances where the alleged defamatory statement was secretive or inherently

11

undiscoverable"). There is no reason to believe the Iowa Supreme Court would be an outlier on this issue. *See Jacobs v. J. Publ'g Co.*, No. 1:21-cv-00690-MV-SCY, 2022 WL 1554737, at *8 (D.N.M. May 17, 2022) (dismissing defamation claims on statute of limitations grounds), *report and recommendation adopted*, No. 1:21-cv-00690-MV-SCY, 2022 WL 2751718 (D.N.M. July 14, 2022). Thus, because Hearst's publication of the article and video about Leveke were not secretive, the statute of limitations began to run in February 2021 at the latest. Leveke's claims were therefore time-barred by the time he brought them in May 2024.

      Similarly, the Iowa Supreme Court would not apply the republication doctrine broadly enough to make Leveke's claims viable. If the use of embedded code on a website is enough to constitute a "republication" every time it interacts with Google's technology to cause an article to appear in response to a user search, it would "eviscerate the single publication rule. Given the ubiquity of Google searches, the statute of limitations would never expire." *In re Min. Res. Int'l, Inc.*, 565 B.R. at 699. Indeed, a plaintiff like Leveke could search for himself on Google and restart the statute whenever he wanted. This would undermine the Iowa Legislature's decision to adopt the statute of limitations in the first place. *See Arthaud v. Fuglie*, 987 N.W.2d 379, 382 (N.D. 2023) (refusing to apply discovery rule in a manner that would defeat the purpose of the single publication rule). It follows that Leveke's claims fail under Iowa, Arizona, and California law alike.

      B.   *The Court Will Dismiss With Prejudice Because Amendment Would Be Futile.*

      As explained above—and in abundance of caution—the Court considered the new information and allegations in Leveke's Response to the Motion to Dismiss (ECF 28) when it evaluated the viability of his claims. Thus, counting his original and Amended Complaints (ECF 1, ECF 22), Leveke has had three opportunities to try to state a plausible claim. Allowing him further chances would serve no purpose. The Court therefore will dismiss his claims with prejudice. *See Miles v. Simmons Univ.*, 514 F. Supp. 3d 1070, 1080 (D. Minn. 2021) ("A dismissal with prejudice is typically appropriate when a plaintiff has shown 'persistent pleading failures' despite one or more opportunities to amend, or when the record makes clear that any amendment would be futile.") (citations omitted) (quoting *Milliman v. County of Stearns*, No. 13-136 (DWF/LIB), 2013 WL 5426049, at *16 (D. Minn. Sept. 26, 2013)).

## V. CONCLUSION.

Leveke waited too long to bring his defamation claims against Hearst and the John Doe Defendants. The Court therefore **GRANTS** Defendants' Motion to Dismiss (ECF 27) and **DISMISSES** Leveke's claims **WITH PREJUDICE**. The Clerk of Court is directed to enter Judgment accordingly.

    **IT IS SO ORDERED.**

Dated this 17th day of January, 2025.

_____
Stephen H. Locher
UNITED STATES DISTRICT JUDGE

13